UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

TRUSTEES OF THE LOCAL 138 PENSION
TRUST FUND,

        Plaintiff,                         Memorandum and Order

                                                              10 Civ. 5758

     - against -

LOGAN CIRCLE PARTNERS, L.P. and
SEGAL ADVISORS, INC.

        Defendants.
----------------------------------------------------------x

GLASSER, United States District Judge:

      Plaintiff, Trustees of the Local 138 Pension Trust Fund ("the Fund" or "plaintiff"), commenced this action against Logan Circle Partners, L.P. ("Logan Circle" or "defendant"), an asset management firm with responsibility for the investment of a portion of the Fund's pension assets, and Segal Advisors, Inc. ("Segal"), an investment consultant to the Fund, alleging violations of fiduciary duties pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 404-05, for which defendants are liable pursuant to ERISA Section 409, 29 U.S.C. § 1109. Essentially, the Fund alleges Logan Circle purchased and retained securities in violation of certain investment guidelines and that Segal failed to monitor and report on Logan Circle's activities. Defendant Logan Circle moves to dismiss the Second Amended Complaint (the "Complaint") with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is denied.

1

## BACKGROUND

The following facts are presumed to be true for the purposes of deciding this motion and are drawn from the Complaint and documents of which the Court may take judicial notice. Plaintiff is trustee of a multi-employer benefit plan. Second Amended Complaint dated June 17, 2011 ("Am. Compl.") ¶ 2. Logan Circle is an asset management firm responsible for managing a portfolio of fixed income securities purchased with plaintiff's assets. Id. ¶ 8. From 2003 until December 2009, plaintiff hired Segal as an investment consultant to monitor and oversee the performance of its investment managers, including Logan Circle. Id. ¶ 11.

Plaintiff initially contracted with Delaware Investment Advisors to manage its assets. See Declaration of Brett D. Jaffe dated June 30, 2011 ("Jaffe Decl."), Ex. B (the "Investment Advisory Contract"). On September 26, 2007, the Investment Advisory Contract was assigned to Logan Circle. See Jaffe Decl. Ex. C. The Investment Advisory Contract specifies that, "[Logan Circle] shall have sole discretion with respect to investments of funds in the Account as to purchases and sales without prior consultation. [Logan Circle] shall, however, be bound by such written guidelines for the management of the Account as shall from time to time be provided." Id. Ex. B, ¶ 4. With the advice of Segal, plaintiff promulgated the "Local 138 Pension Trust Fund Statement of Overall Investment Objectives and Policy" (the "Guidelines"). Am. Compl. ¶ 13; Declaration of Brett D. Jaffe dated June 30, 2011 ("Jaffe Decl."), Ex. A. The Guidelines established the criteria for the selection and retention of securities held by Logan Circle on behalf of the Fund. Am. Compl. ¶ 8.

Plaintiff alleges that Logan Circle violated the Guidelines in several ways. First, plaintiff alleges that the Guidelines required Logan Circle "to adhere to an overall selection of securities consistent with a Lehman Bond Index" and that Logan Circle failed to do so. Am. Compl. ¶¶ 9, 23. Second, plaintiff alleges that Logan Circle violated the Guidelines by purchasing, without advance written consent, securities below the Guideline's minimum class, quality, and grade. Id. ¶¶ 11, 24. Third, plaintiff alleges that the Guidelines required Logan Circle to provide written notice to the Fund and Segal if purchased securities were subsequently downgraded below the Guidelines' minimum. Id. ¶ 17; see Jaffe Decl. Ex. A, at 8. Fourth, plaintiff alleges that if a security fell below investment grade, Logan Circle was also required to take action to return the portfolio to compliance within 90 days. Am. Compl. ¶ 14. Plaintiff alleges that beginning in 2007, numerous securities held under Logan Circle's management were downgraded to ratings below those permitted by the Guidelines and that Logan Circle failed to provide written notice or bring the portfolio into compliance within 90 days. Id. ¶¶ 13-14, 25-26. Plaintiff alleges that as a result of these violations, the Fund was damaged by no less than $2 million. Id. ¶ 27.

## DISCUSSION

### I. Legal Standard

#### A. Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6), the Fund's pleadings must contain "sufficient factual matter, accepted as true,

3

to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  On a motion to dismiss for failure to state a claim, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" York v. Ass'n of the Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice.  Id. (alteration in original) (internal quotations, citations, and alterations omitted).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Although the Court is limited to facts as stated in the Amended Complaint, it may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007). Here, the Amended Complaint incorporates the Guidelines, the Investment Advisory Contract, and the Consent to Assignment by reference, see Am. Compl. ¶¶ 6, 8, 13, and they are appropriately considered in deciding this motion.

### B. ERISA

ERISA § 1132(a)(2) provides that an "action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under [29 U.S.C. § 1109]," which in turn makes ERISA fiduciaries who breach their duties "personally liable to make good to [the] plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a).

To state a claim for breach of fiduciary duty, a complaint must allege that: (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty, (4) resulting in losses to the plan. See 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach"); In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig., 756 F. Supp. 2d

5

330, 350 (S.D.N.Y. 2010) (discussing elements of breach); Brandt v. Grounds, 687 F.2d 895, 898 (2d Cir. 1982) ("[A] causal connection is required between the breach of fiduciary duty and the losses incurred by the plan."). It is undisputed that defendant was a fiduciary, acting in a fiduciary capacity. Plaintiff's claims for breach of fiduciary duty are primarily based on ERISA's dictate that a fiduciary must adhere to a pension fund's governing documents. See 19 U.S.C. § 1104(a)(1)(D); Dardaganis v. Grace Capital Inc., 889 F.2d 1237, 1241-42 (2d Cir. 1989) (holding a fiduciary has a duty to act in accordance with plan documents, a separate basis for liability from the general duty of prudence). For the purposes of this motion only, Logan Circle does not dispute those claims. Logan Circle brings this motion to dismiss solely on the grounds that plaintiff has failed to plead the fourth element: a causal connection between the breach of fiduciary duty and the losses incurred by the plan.

## II.  Causation

Logan Circle argues that plaintiff has failed to plead damages with the requisite specificity because the Amended Complaint "does not contain a single non-conclusory allegation to suggest that [Logan Circle] . . . was the actual cause of any injury to the Local 138 Fund." Def.'s Mem. at 1. These arguments are without merit. In an attempt to obtain dismissal of the Amended Complaint, Logan Circle repeatedly mischaracterizes plaintiff's claims and selectively quotes from the Amended Complaint. For example, defendant states that plaintiff's "central allegation" is that after 2007, Logan Circle retained 74 securities, even though they had been downgraded to ratings below that permitted by the Guidelines, and neither notified plaintiff of the downgrade nor sold the securities. Def.'s Mem. at 8 (citing Am. Compl. ¶¶ 23, 25, 28). Logan

6

Circle argues that even if this allegation is true, plaintiff has failed to plead causation because "[n]owhere does [the Amended Complaint] allege that the 74 downgraded securities actually lost value subsequent to their downgrade and prior to their ultimate sale." Def.'s Mem. at 8. In fact, the next sentence in the Amended Complaint states that "The [74] securities that were downgraded lost approximately $2 million in value over the period 2008 to 2009." Am. Compl. ¶ 23.

It is apparent that it is not the sufficiency but the merits of the Amended Complaint that Logan Circle challenges, for Logan Circle goes on to make a number of factual allegations regarding the retention and sale price of those 74 downgraded securities, claiming they were not actually downgraded until 2009 and that Logan Circle ultimately produced substantial returns for plaintiff in 2009 and 2010. Def.'s Mem. at 9 n.5. Essentially, Logan Circle argues plaintiff ultimately benefited economically, despite defendant's breach of fiduciary duty, and therefore plaintiff is not entitled to damages. See id. at 11. These factual arguments are premature and not relevant to the sufficiency of plaintiff's pleading.

Logan Circle then argues that plaintiff "relies entirely on a '20/20 hindsight approach'" in alleging that Logan Circle's failure to notify plaintiff of the retention of downgraded securities damaged plaintiff because it effectively prevented plaintiff from taking any action to return the Fund's portfolio to within the Guidelines. Def.'s Mem. at 9 (citing Am. Compl. ¶ 34). Logan Circle argues that plaintiff has failed to show it could have prevented losses, suggesting that "market volatility during an unprecedented credit and financial crisis" would have prevented plaintiff from doing so. See Def.'s Reply Mem at 7; Def.'s Mem at 9 ("This allegation—devoid of any detailed allegations as to

7

how the [plaintiff] would have 'repaired and restored the portfolio' or 'replaced the downgraded securities with quality securities'–is not grounded in plausible facts." (emphasis in original)).  Logan Circle also argues that plaintiff has failed to plead it "had the capacity or intention to actually control the portfolio's investments to 'invest in higher quality securities.'"  Def.'s Reply. Mem. at 8-9.  Again, Logan Circle's argument addresses the merits of plaintiff's claims, not the sufficiency of the Amended Complaint.  Whether the portfolio's losses were the result of "unprecedented" changes in the market or of Logan Circle's breach of fiduciary duty and whether plaintiff feasibly could have taken corrective measures are factual issues and defenses.  See In re Morgan Stanley ERISA Litig., 696 F. Supp. 2d 345, 363 (S.D.N.Y. 2009) ("In ERISA cases, generally loss causation is an issue of fact and is thus not properly considered at this early stage in the proceeding." (citations omitted).  Plaintiff's allegations are adequate to meet the pleading requirements of Rule 8.  See, e.g. In re First Am. Corp. ERISA Litig., No. SACV 07-01357, 2008 WL 5666637, at *8 (C.D. Cal. July 14, 2008) (denying motion to dismiss where complaint alleged an identical theory of causation).

Logan Circle also argues plaintiff fails to plead any lawful measure of damages: "the [Amended Complaint] alleges without explanation that the Fund's losses are estimated to be 'between $2 million to $5 million.' [Am. Compl. ¶ 53]."  Def.'s Mem. at 13.  In fact, the Amended Complaint elsewhere clearly sets forth plaintiff's grounds for alleging this loss amount.  The Amended Complaint alleges that Logan Circle used the Barclay's Aggregated Bond Index as a benchmark for the portfolio's performance.[1]  Am.

---

[1] According to the Amended Complaint, "The Barclay's Index is a simulated investment portfolio comprised of available fixed income securities."  Am. Compl. ¶ 29.  As defendant notes, the Guidelines state that the benchmark for the Fund's portfolio "would be measured against the 'Lehman Aggregate Bond Index.'  Following Lehman Brother's collapse and subsequent purchase by Barclay's Capital, the

8

Compl. ¶ 29.  At the beginning of 2008, the portfolio under Logan Circle's management was valued at $40 million.  Id. ¶¶ 9, 31.  Plaintiff alleges that during 2008, the Barclay's Aggregated Bond Index had a positive investment return of 5.25%.  Id. at ¶ 30.  In contrast, during 2008 the portfolio managed by Logan Circle had a negative return of 6.8%, a difference of 12% from the Barclay's Aggregated Bond Index performance (or $4.8 million dollars).  Id. ¶¶ 30-31.  The Amended Complaint specifically alleges that "[t]he portfolio's losses were the direct result of Logan's failure to comply with [the] Guidelines."  Id. ¶ 33.  Plainly, paragraph 53 of the Amended Complaint refers to the fact that plaintiff's damages could either be measured as the amount actually lost (6.8% of $40 million, or $2.7 million) or the amount required to restore plaintiffs to the position they would have occupied but for the breach, using the Barclay's Aggregated Bond Index performance as a benchmark (12%, or $4.8 million).  Defendant elsewhere concedes in their own brief that "[u]nder ERISA, damages are a relative measure, comparing how the portfolio performed subsequent to the alleged breach of duty to how it would have performed absent that breach," Def.'s Reply Mem. at 10 (citing Dardaganis, 889 F.2d at 1243-44), precisely the theory of damages advanced by plaintiff.  Again, it is apparent that it is not the sufficiency of the Amended Complaint that Logan Circle challenges but the legitimacy of using the Barclay's Aggregated Bond Index as the standard for measuring plaintiff's losses.  See, e.g., Def.'s Reply Mem. at 7 (arguing "Logan Circle had no obligation whatsoever to perform up to the benchmark").

Defendant also urges the Court to dismiss the Amended Complaint because plaintiff has not pled damages with sufficient specificity and plaintiff should have

---

'Lehman Aggregate Bond Index' was renamed the 'Barclays Aggregate Bond Index.'"  Def.'s Reply Mem. at 6 n.1.

9

provided: "(i) a list of securities held in the Local 138 Fund's portfolio, including their credit rating, (ii) in the case of downgraded securities, the date of those downgrades, and (iii) the date on which Logan Circle sold any downgraded security out of the Local 138 Fund portfolio." Def.'s Reply Mem. at 11. But fiduciary duty claims brought under ERISA are subject only to the "simplified pleading standard" of Federal Rule of Civil Procedure 8(a). In re Worldcom, Inc., 263 F. Supp. 2d 745, 756 (S.D.N.Y. 2003) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). The particularized pleading requirements of the securities laws do not apply in ERISA cases. In re Morgan Stanley ERIA Litig., 696 F. Supp. 2d at 363 (citing In re: Cardinal Health, Inc. ERISA Litig., 424 F. Supp. 2d 1002, 1043–44 (S.D.Ohio 2006)).

Finally, Logan Circle relies heavily on Colliton v. Cravath, Swaine & Moore LLP, No. 08 Civ. 400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), a case that is plainly distinguishable. In Colliton, plaintiff, a former employee, alleged that defendant, a leading law firm, breached its fiduciary duties to him in its management of its savings plan for attorneys, in violation of ERISA. Those breaches included, for example, failing to investigate whether cash was deposited promptly and failing to monitor whether plan funds were invested outside of the jurisdiction of U.S. Courts. Id. at * 9. However, plaintiff failed to show that such investigations would have uncovered any irregularities. Plaintiff's complaint presented no logical or plausible theory as to how the alleged breaches could have harmed him. Plaintiff then summarily alleged that he was injured in the amount of $15,000, but "[did] not assert how he arrived at this figure, whether the figure is an actual loss or failure to make an additional $15,000, or even which of the sixteen different breaches actually caused the 'loss.'" Id.

Here, in contrast, plaintiff presents a logical and plausible theory of liability, namely: defendant breached its fiduciary duties by purchasing and retaining downgraded securities; those downgraded securities then declined in value; an aggregated bond index of available fixed income securities is a reasonable measure of how the portfolio would have performed absent the breach; and therefore defendant is liable to plaintiff for the difference between the actual performance of the portfolio and the benchmark.  Plaintiff's Amended Complaint contains sufficient factual allegations to state a claim for relief and provides "fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007).  As such, defendant's motion to dismiss must be denied.

## CONCLUSION

For all of the reasons set forth above, defendant's motion to dismiss the Second Amended Complaint is DENIED.

**SO ORDERED.**

Dated:	Brooklyn, New York
	May 25, 2012

		/s/
	I. Leo Glasser
	United States District Judge